Kane Moon (SBN 249834)
   kane.moon@moonyanglaw.com
H. Scott Leviant (SBN 200834)
   scott.leviant@moonyanglaw.com
Mariam Ghazaryan (SBN 341119)
   mariam.ghazaryan@moonyanglaw.com
**MOON & YANG, APC**
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125

Attorneys for Plaintiff, Devin Michael D. Longboy

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVIN MICHAEL D. LONGBOY, individually, and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>vs.<br><br>PINNACLE PROPERTY MANAGEMENT SERVICES, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>   Defendants | Case No.: 3:23-cv-01248-AMO<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT PINNACLE PROPERTY MANAGEMENT SERVICES, LLC'S MOTION TO COMPEL ARBITRATION**<br><br>Date:  July 27, 2023<br>Time: 2:00 p.m.<br>Courtroom:   10<br>Judge: Hon. Araceli Martinez-Olguin<br><br>Action Filed: January 24, 2023<br>Action Removed: March 17. 2024 |

TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

I. INTRODUCTION AND PROCEDURAL HISTORY ......................................... 1

DISCUSSION ................................................................................................................ 2

II. DEFENDANT'S ARBITRATION POLICY IS UNCONSCIONABLE ............. 2

    A. Unconscionability in Contracts ................................................................. 2

    B. The Arbitration Provision is Procedurally Unconscionable ..................... 3

    C. The Arbitration Provision is Substantively Unconscionable ................... 4

        1. Rule 4(a) of the IRR Shocks the Conscience and is Unconscionable 4

        2. Rule 4(b) of the IRR is Overly Harsh, Unduly Oppressive, Unreasonably Favorable to Defendant, and Shocks the Conscience . 5

        3. Discovery Provisions of Rule 7 of the IRR are Unconscionable ....... 6

        4. Rule 18 Should Not Be Invoked to Save the IRR and IRA ............... 7

    D. If the Court Grants Defendant's Motion, the PAGA Claim Should be Stayed Pending the Decision in *Adolph*, Since the PAGA Claim Cannot be Compelled in its Entirety to Arbitration .................................. 9

        1. In *Iskanian*, the California Supreme Court Recognized That the State's Interest in PAGA Claims Is Not Subject to the Federal Arbitration Act ..................................................................................... 9

        2. If This Court Elects to Compel an "Individual" PAGA Claim to Arbitration, Notwithstanding *Iskanian*, the Portions not Compelled Should be Stayed Pending the Decision in *Adolph* .......................... 13

III. CONCLUSION ................................................................................................... 14

# TABLE OF AUTHORITIES

**FEDERAL DECISIONAL AUTHORITY**

*Am. Airlines v. Wolens*, 513 U.S. 219 (1995) ................................................................. 3

*EEOC v. Waffle House, Inc.*, 534 U.S. 279, 122 S.Ct. 754 (2002) ..................... 10, 12, 13

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017) ......................................... 5

*Preston v. Ferrer*, 522 U.S. 346 (2008) ................................................................... 10, 11

**CALIFORNIA DECISIONAL AUTHORITY**

*Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638 (2004) ................................ 4

*Alberto v. Cambrian Homecare*, 2023 WL 3373522 (Cal.App.2 Dist., 2023) ................. 8

*Ali v. Daylight Transport, LLC*, 59 Cal. App. 5th 462 (2020) .......................................... 6

*Armendariz v. Foundation Health Psychcare Services, Inc.* 24 Cal. 4th 83 (2000) passim

*Bakersfield Coll. V. Cal. Cmty. Coll. Athletic Ass'n*, 41 Cal. App. 5th 753 (2019) .......... 3

*Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014) *certiorari denied sub nom. CLS Transportation Los Angeles v. Iskanian*, ⸺ U.S. ⸺, 135 S.Ct. 1155, 190 L.Ed.2d 911 (Jan. 20, 2015) ....................................................................... 10, 12, 13

*Parada v. Super. Ct.*, 176 Cal. App. 4th 1554 (2009) ...................................................... 9

*Pearson Dental Supplies, Inc. v. Superior Court*, 48 Cal. 4th 665 (2010) ............... 10, 11

*Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227 (2015) ............................. 4

*Roman v. Superior Court*, 172 Cal. App. 4th 1462 (2009) ............................................... 8

*Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138 (2012) .................................. 6

**STATUTES**

Business & Professions Code § 17200, *et seq.* ................................................................ 6

Civil Code § 1670.5(a) ...................................................................................................... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Kevin Longboy ("Plaintiff") filed a Class Action Complaint against Defendant Pinnacle Property Management Services, LLC ("Pinnacle") on January 24, 2023, in the Superior Court of California, County of San Mateo (Case No. 23-CIV-00301). In the Complaint, Plaintiff alleged: (1) Failure To Pay Minimum Wages [Labor Code §§ 204, 1194, 1194.2, and 1197]; (2) Failure To Pay Overtime Compensation [Labor Code §§ 1194 and 1198]; (3) Failure To Provide Meal Periods [Labor Code §§ 226.7 and 512]; (4) Failure To Authorize And Permit Rest Breaks [Labor Code § 226.7]; (5) Failure To Indemnify Necessary Business Expenses [Labor Code § 2802]; (6) Failure To Timely Pay Final Wages At Termination [Labor Code §§ 201-203]; (7) Failure To Provide Accurate Itemized Wage Statements [Labor Code § 226]; and (8) Unfair Business Practices [Business & Professions Code §§ 17200, *et seq*.].  The lawsuit was then removed to this Court, pursuant to the Class Action Fairness Act.

On April 4, 2023, this Court issued an order allowing Plaintiff to amend the Complaint to add a claim for relief for civil penalties under the Labor Code Private Attorneys General Act ("PAGA"). Plaintiff filed a First Amended Class and Representative Action Complaint ("FAC") against Defendant on April 5, 2023. In the FAC, Plaintiff alleged one additional claim for relief for Civil Penalties under PAGA [Labor Code §§ 2699, *et seq*.].

In lieu of an Answer to Plaintiff's complaint, Pinnacle filed their Motion to Compel Arbitration ("Motion") on May 5, 2023.

Defendant's Motion is dependent upon the enforceability of two documents that it asserts as the basis for its right to compel arbitration, the Issue Resolution Agreement and the Issue Resolution Rules. These documents are referred to by Pinnacle as the "Agreement."  They are not, however, one document, a fact that is significant to the outcome of this Motion.  Instead, the Issue Resolution Agreement and Issue Resolution Rules are separate documents, as evidenced by Rule 19 of the Issue Resolution Rules that

states "… the parties agree that the Company may alter or terminate the Agreement and these Issue Resolution Rules on December 31st of any year…" (Dkt. No. 17-1: Declaration of Erin Cassidy ["Cassidy Decl."], at Exh. 1, dkt. p. 18.)[1] Relatedly, on the last page of the arbitration agreement, it states, in part: "Company agrees to follow this Issue Resolution Agreement and the Issue Resolution Rules…" (*Id*., at dkt. p. 19.) Defendant, by the terms of its own arbitration documents, has separated the "Agreement" into two separate documents, an agreement to arbitrate and a set of rules that govern arbitration. For clarity, Plaintiff will refer to the Issue Resolution Agreement and Issue Resolution Rules as the "IRA" and "IRR", respectively.

## DISCUSSION

## II.     DEFENDANT'S ARBITRATION POLICY IS UNCONSCIONABLE

The Motion should be denied because the IRA and the IRR operate together in an unconscionable manner. First, Defendant's IRA and IRR are procedurally unconscionable in that they fail to provide applicants, such as Plaintiff, any negotiating power or meaningful choice whatsoever. Second, the IRA and IRR are also substantively unconscionable in that the terms are one-sided, lack any modicum of bilaterality, and frustrate Plaintiff's substantive rights. As Plaintiff explains below, the IRA and IRR are plagued with sufficient degrees of procedural and substantive unconscionability so that the IRA cannot be enforced.

### A.     Unconscionability in Contracts

The California Supreme Court has held that unconscionability has both "procedural" and "substantive" elements, with the former focusing on "oppression" or "surprise" due to unequal bargaining power, and the latter on "overly harsh" or "one-side" results. *Armendariz v. Foundation Health Psychcare Services, Inc*. 24 Cal. 4th 83, 114 (2000). Procedural and substantive unconscionability must both be present, but need not

---

[1] All page references are to the ECF document page number, not the internal page numbers of any document.

be equal in degree for a court to refuse to enforce a contract or clause under the doctrine of unconscionability. *Id*. Courts use a sliding scale approach when evaluating an agreement's unconscionability: the more substantively oppressive the terms, the less evidence of procedural unconscionability is required to conclude that the terms are unenforceable, and vice versa. *Id*.

### B. The Arbitration Provision is Procedurally Unconscionable

Procedural unconscionability "is broadly conceived to encompass not only the employment of sharp practices and the use of fine part and convoluted language, but a lack of understanding and an inequality of bargaining power." *Am. Airlines v. Wolens*, 513 U.S. 219, 249 (1995).

Here, Plaintiff was required to sign the 15-page, overly complex IRA and IRR in order to apply for employment with Pinnacle. It is procedurally unconscionable to force a low-wage, unsophisticated worker to sign an adhesion contract relinquishing the right to go to court. Pinnacle argues that the "… arbitration rules are clear and straightforward, and the Agreement is short." (Dkt. No. 17: Motion, at p. 8.) However, as stated in *Bakersfield Coll. V. Cal. Cmty. Coll. Athletic Ass'n*, 41 Cal. App. 5th 753, 762 (2019), to avoid a finding of procedural unconscionability, an employer must provide a "meaningful" opportunity to negotiate or reject contractual terms. Plaintiff was required to sign the IRA and IRR in order to obtain an interview and possible employment with Pinnacle. There was no meaningful opportunity to negotiate or reject contractual terms. Rather, there was no opportunity whatsoever to negotiate the terms. If Plaintiff rejected these terms, then that would mean that he "no longer desire[d] for Pinnacle to consider [his] application for employment. (Dkt. No. 17-1: Cassidy Decl., at Exh. 1, dkt. p. 5). Assuming Plaintiff was aware of the arbitration clause, he would not have understood the legal significance of the clause or been able to negotiate the terms of Pinnacle's "take it over leave it" policy. Moreover, even if Plaintiff knew that such a policy existed, and understood the implications of such policy, he would not been in the position to negotiate the terms of Pinnacle's "take it or leave it" policy. On the first page of the IRA, Pinnacle maintains

their position that individuals begin their employment relationship by signing the IRA, and by doing so, they also acknowledge receipt of the IRR. (*Id*.) Individuals "will not be considered as an applicant until [they] have signed the Agreement (IRA)." (*Id*.)

Here, Pinnacle limited Plaintiff's employment and bargaining power to an arbitration policy with terms that Plaintiff had no ability to negotiate, and he signed the IRA and IRR only as a condition of obtaining and maintaining employment. There was therefore "lack of mutuality" in the creation of the purported arbitration agreement. Consequently, the provisions of the IRA and IRR are starkly one-sided, and lack mutuality. The IRA is procedurally unconscionable.

### C. The Arbitration Provision is Substantively Unconscionable

Procedural unconscionability, alone, does not render and arbitration agreement unenforceable. But significant procedural unconscionability, when coupled with substantive unconscionability, ***does*** render any contract unenforceable. Substantive unconscionability focuses "on overly harsh or one-sided results," *Armendariz*, 24 Cal. 4th at 114, and the key factor [for substantive unconscionability] is a "lack of mutuality" *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004). Moreover, a shortened statute of limitations, a one-sided arbitrable process designated to favor the employer, can be substantively unconscionable. *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 249-256 (2015).

#### 1. Rule 4(a) of the IRR Shocks the Conscience and is Unconscionable

Rule 4(a) of the IRR is shocking, the like of which has never been seen before by Plaintiff's counsel. The procedure for commencing arbitration states verbatim:

> An Employee shall commence an arbitration by filing an Arbitration Request Form. This may be done by submitting the Arbitration Request Form to: Pinnacle Property Management Services, LLC. The Arbitration Request Form must be accompanied by a $50.00 filing fee made payable to "Pinnacle Property Management Services, LLC.

(Dkt. No. 17-1: Cassidy Decl., at Exh. 1, dkt. p. 10-11.) Before any fee to commence an

arbitration is paid to an arbitrator, a plaintiff must pay Pinnacle money. This procedure is not only outrageous, but it is entirely one-sided as it requires employees to pay Pinnacle a fee in order to commence arbitration proceedings against Pinnacle. "In order to show substantive unconscionability, in contrast Plaintiff must show that the Agreement is 'overly harsh,' 'unduly oppressive,' 'unreasonably favorable,' or must 'shock the conscience.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017). Demanding a payment directly from an employee certainly qualifies as a provision that shocks the conscience, and it is unreasonably favorable to Defendant. This provision is enough to deter any individual from bringing a complaint against their employer.

**2. Rule 4(b) of the IRR is Overly Harsh, Unduly Oppressive, Unreasonably Favorable to Defendant, and Shocks the Conscience**

While Rule 4(a) of the IRR is disturbing for its brazenness, Rule 4(b) of the IRR is truly disturbing. Pinnacle places a one-year time limit on employees to initiate an arbitration, or it "shall constitute a waiver with respect to [the] dispute relative to the employee." (Dkt. No. 17-1: Cassidy Decl., at Exh. 1, dkt. p. 11.) While a shortened statute of limitations does not, alone, compel a finding of unconscionability, an arbitral limitations period shorter than the applicable statute of limitations is a factor in determining whether an arbitration contract is substantively unconscionable:

> "California courts have held that, in the context of statutory claims such as the wage-and-hour claims brought by [respondents], a provision in an arbitration agreement shortening the statutory limitations period is substantively unconscionable. 'The Labor Code ... affords employees three or four years to assert [wage-and-hour claims]. [Citations.] Where, as in this case, arbitration provisions undermine statutory protections, courts have readily found unconscionability.' [Citations.]" (*Pinela*, *supra*, 238 Cal.App.4th at p. 254, 190 Cal.Rptr.3d 159; accord, *Samaniego v. Empire Today LLC* (2012) 205 Cal.App.4th 1138, 1147, 140 Cal.Rptr.3d 492 (*Samaniego*); *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th

1267, 1283, 16 Cal.Rptr.3d 296.)

*Ali v. Daylight Transport, LLC*, 59 Cal. App. 5th 462, 478 (2020) (arbitration agreement provision shortening limitations period for wage and hour claims to 120 days is substantively unconscionable; *see also Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1147-1148 (2012), cited by *Ali*, (shortened six-month limitations period under arbitration agreement for wage and hour claims undermined statutory protections and was a factor, along with several one-sided provisions, in finding substantive unconscionability). The claims in this matter, as in *Ali*, include statutes of limitations of three years for unpaid wages and four years when extended by operation of the Unfair Competition Law, Business & Professions Code § 17200, *et seq*. The IRR reduces that extended statutory period by 75%, an overly harsh, unduly oppressive, unreasonably favorable, and shocking provision. This rule should weigh heavily when the Court considers the degree of substantive unconscionability as part of the full unconscionability analysis.

In addition to its direct substantive unconscionability, this one-year time limit conflicts with Rule 10 of the IRR, a choice of law provision, which requires that the substantive law of California be applied to claims brought by Plaintiff. (Dkt. No. 17-1: Cassidy Decl., at Exh. 1, dkt. p. 16.) Neither federal nor state law provides for a one-year time limit for an employee to initiate an arbitration.

Thus, Rule 4 should be held to be substantively unconscionable because it is an overly harsh, unduly oppressive, unreasonably favorable, and shocking provision.

**3.     Discovery Provisions of Rule 7 of the IRR are Unconscionable**

Under Rule 7(a) of the IRR, it appears that each party is limited to one set of 20 requests that may be some combination of interrogatories and document requests. (Dkt. No. 17-1: Cassidy Decl., at Exh. 1, dkt. p. 13.) This is far less than either state or federal discovery rules permit, and the restriction on the number of sets of discovery impedes the ability to conduct follow-up discovery based on new information obtained. Even a request for additional discovery under Rule 7(c) requires a showing that the additional discovery "is not overly burdensome, and will not unduly delay conclusion of the arbitration." With

only 90 days permitted for discovery under Rule 7(e) (as discussed more below), any additional discovery will significantly alter the timeline for conclusion of the arbitration. (Dkt. No. 17-1: Cassidy Decl., at Exh. 1, dkt. p. 13.)

Also under Rule 7(a) of the IRR, Pinnacle places an unclear and burdensome provision regarding discovery rules that pertain to interrogatories and document requests. It claims that "[a]nswers to interrogatories must be served within 21 calendar days of receipt of the interrogatories," which follows neither state nor federal rules of civil procedure. (Dkt. No. 17-1: Cassidy Decl., at Exh. 1, dkt. p. 13.)

Rule 7(e) refers to the time for completion of discovery, which in itself is "overly harsh," as it requires that "all discovery [be completed] within ninety (90) calendar days after the selection of the Arbitrator."  (Dkt. No. 17-1: Cassidy Decl., at Exh. 1, dkt. p. 13.) However, Rule 7(e) goes on to state that "the discovery cut-off date shall govern, as per Rule 5 above." (*Id*.) The reference to Rule 5 is nonsensical, as Rule 5 of the IRR refers to the selection of an arbitrator. Additionally, 90 days to complete discovery after selection of an Arbitrator is nearly impossible, since small delays in responding to requests to meet and confer, small delays in responding to written statements regarding deficiencies in responses, and small delays in respondent to requests for supplemental responses and then providing same will add up to quickly to exhaust the 90 day cut-off. This unreasonably short time limit of 90 days does not provide a fair opportunity to conduct discovery.

Rule 7(d) provides guidelines for discovery disputes and asserts that "the Arbitrator shall be guided by the discovery rules contained in the Federal Rules of Civil Procedure." Rule 7(e) and Rule 7(d) conflict with one another, since the timeline provided by Pinnacle to respond to discovery does not follow the Federal Rules of Civil Procedure.

Rule 7(c) provides for additional discovery, but it is emphasized that it will be granted on a showing of "substantial need." There is no guarantee that additional discovery or additional time to conduct discovery beyond 90 days will be provided to Plaintiff.

**4.      Rule 18 Should Not Be Invoked to Save the IRR and IRA**

Rule 18 provides the guidelines for severing provisions of the IRR that are held to

conflict with mandatory provisions of applicable law. In the context of severing unconscionable provisions from an arbitration agreement, "the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement. But, here, the severance provision should be disregarded because the presence of multiple unconscionable provisions "indicate[s] a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Armendariz*, 24 Cal. 4th at 124. Thus, the Court, in its discretion, may refuse to enforce the contract as a whole if it permeated by the unconscionability, rather than severing, because, here, the rot runs deep. *See Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1477-78 (2009), quoting *Armendariz*, supra, 24 Cal. 4th at 122. The unlawful provisions not only impose arbitration on an employee, but as Rule 4(a) provides, the employees must pay a fee **to the Defendant** to initiate the arbitration, the employees lose the protections of statutes of limitation, their discovery is incredibly abbreviated and short in duration, and the IRR contains internally inconsistent provisions. The number of issues within the IRR is significant in and of itself. One key factor weighing against severance arises when "the arbitration agreement contains more than one unlawful provision." See *Alberto v. Cambrian Homecare*, 2023 WL 3373522 (Cal.App.2 Dist., 2023) quoting *Armendariz*, *supra*, 24 Cal. 4th at 124. As discussed above, the IRR contains confusing provisions and highly oppressive provisions that undermine substantive rights. The number of issues within the IRR weighs heavily in favor of refusing to bail out Defendant by severing provisions until what is left constitutes something less confusing and less shockingly oppressive. By signing the IRA, potential applicants and employees also automatically acknowledge receipt of the IRR. Based on the foregoing, Rule 18 should be held to be unconscionable.

      When a court determines that a provision is unconscionable, "the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Civ. Code § 1670.5(a); *Id.* at 121-22. But it is not for

the Courts to rescue arbitration agreements for employers by severing provisions that were unlawful at the time they were included by the employer: doing so would reward employers for imposing unlawful terms on employees. *Armendariz*, 24 Cal. 4th at 123-25; *Parada v. Super. Ct.*, 176 Cal. App. 4th 1554, 1586 (2009) (declining to reward employer by severing clauses that were unlawful under existing case law at the time imposed on the employee). Here, the provisions were unlawful at the time they were included by the employer and have yet to be modified or terminated by Pinnacle.

### D. If the Court Grants Defendant's Motion, the PAGA Claim Should be Stayed Pending the Decision in *Adolph*, Since the PAGA Claim Cannot be Compelled in its Entirety to Arbitration

In the event that the Court does not find that procedural and substantive unconscionability so permeates the IRA and IRR that enforcement should be denied, the Court must nevertheless decline to dismiss the representative portion of the PAGA claim.

#### 1. In *Iskanian*, the California Supreme Court Recognized That the State's Interest in PAGA Claims Is Not Subject to the Federal Arbitration Act

Defendant contends that PAGA claims are subject to the FAA. The California Supreme Court strongly disagrees:

> Simply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state,* which alleges directly or through its agents—either the Labor and Workforce Development Agency or aggrieved employees—that the employer has violated the Labor Code. Through his PAGA claim, Iskanian is seeking to recover civil penalties, 75 percent of which will go to the state's coffers. We emphasized in *Arias* that "an action to recover civil penalties 'is fundamentally a law enforcement action designed to protect the public and not to benefit private parties' "; that "[i]n a lawsuit brought

Case No.: 3:23-cv-01248-AMO                           Page 9
PLAINTIFF'S OPPOSITION TO DEFENDANT PINNACLE PROPERTY MANAGEMENT SERVICES, LLC'S MOTION TO COMPEL ARBITRATION

> under the [PAGA], the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies"; and that "an aggrieved employee's action under the [PAGA] functions as a substitute for an action brought by the government itself." (*Arias, supra,* 46 Cal.4th at p. 986, 95 Cal.Rptr.3d 588, 209 P.3d 923.) The fact that any judgment in a PAGA action is binding on the government confirms that the state is the real party in interest. (*Ibid.*) It is true that "a person may not bring a PAGA action unless he or she is 'an aggrieved employee' (§ 2699, subd. (a))" (conc. opn., *post,* 173 Cal.Rptr.3d at p. 323, 327 P.3d at p. 157), but that does not change the character of the litigant or the dispute. As Justice Chin correctly observes, "*every* PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee—the plaintiff bringing the action—or as to other employees as well, is a representative action on behalf of the state." (*Id.* at p. 322, 327 P.3d at p. 157.)

*Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 386-87 (2014) *certiorari denied sub nom. CLS Transportation Los Angeles v. Iskanian*, ⸺ U.S. ⸺, 135 S.Ct. 1155 (Jan. 20, 2015).

Applicable to this matter, *Pearson Dental Supplies, Inc. v. Superior Court*, 48 Cal. 4th 665 (2010) observed that the United States Supreme Court recognizes that there is a distinction between a state actor serving as an adjudicator and a state actor serving as a prosecuting entity:

> It is true that the United States Supreme Court has recognized in *EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 that an arbitration agreement between an employer and an employee is not effective to bar the Equal Employment Opportunity Commission from prosecuting statutory antidiscrimination violations.

*Pearson*, at 681. Continuing, the California Supreme Court said:

> [A]s the United States Supreme Court recently recognized in *Preston v.*

>*Ferrer* (2008) 552 U.S. 346, 128 S.Ct. 978, 169 L.Ed.2d 917, an arbitration agreement could, under federal law, validly limit the resort of an employee to an administrative agency that acts as an ***adjudicator***, rather than as a ***prosecutor***, of employment claims, such as the Labor Commissioner in this state.

*Pearson*, at 681 (emphasis added).  Here, the PAGA relator acts as a proxy for the ***prosecutor*** function of the State of California, not the adjudicative function of the State.[2] This state police power function is protected from pre-emption, as recognized by the United States Supreme Court:

>[T]he high court has emphasized that " 'courts should assume that "the historic police powers of the States" are not superseded "unless that was the clear and manifest purpose of Congress.' (*Arizona v. United States* (2012) 567 U.S. ——, ——, 132 S.Ct. 2492, 2501, 183 L.Ed.2d 351; see *Chamber of Commerce v. Whiting* (2011) 563 U.S. ——, ——, 131 S.Ct. 1968, 1985, 179 L.Ed.2d 1031 ['Our precedents "establish that a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." [Citation.]'].)" (*Sonic II, supra,* 57 Cal.4th at p. 1154, 163 Cal.Rptr.3d 269, 311 P.3d 184.) There is no question that the enactment and enforcement of laws concerning wages, hours, and other terms of employment is within the state's historic police power. (See *Metropolitan Life Ins. Co. v. Massachusetts* (1985) 471 U.S. 724, 756, 105 S.Ct. 2380, 85 L.Ed.2d 728 [" 'States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State.' "]; *Kerr's Catering Service v. Dept. of Industrial Relations* (1962) 57 Cal.2d 319, 326–327, 19 Cal.Rptr. 492, 369 P.2d 20.)

---

[2] This distinction noted in *Pearson* was recognized in *Preston v. Ferrer*, 522 U.S. 346 (2008).

    Moreover, how a state government chooses to structure *its own* law enforcement authority lies at the heart of state sovereignty. (See *Printz v. United States* (1997) 521 U.S. 898, 928, 117 S.Ct. 2365, 138 L.Ed.2d 914 ["It is an essential attribute of the State's retained sovereignty that they remain independent and autonomous within their proper sphere of authority."].) We can discern in the FAA no purpose, much less a clear and manifest purpose, to curtail the ability of states to supplement their enforcement capability by authorizing willing employees to seek civil penalties for Labor Code violations traditionally prosecuted by the state. *Iskanian*, 59 Cal. 4th at 388.  FAA preemption does not apply, as *Iskanian* expressly held.

    As the California Supreme Court observed in *Iskanian*, the United Stated Supreme Court has differentiated between arbitration agreements impacting parties' *own* rights and arbitration agreements that would impair *governmental* action:

> The one case in which the high court has considered the enforcement of an arbitration agreement against the government does not support CLS's contention that the FAA preempts a PAGA action. In *EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (*Waffle House* ), the high court held that an employment arbitration agreement governed by the FAA does not prevent the Equal Employment Opportunity Commission (EEOC) from suing an employer on behalf of an employee bound by that agreement for victim-specific relief, such as reinstatement and back pay. The court based its conclusion primarily on the fact that the EEOC was not a party to the arbitration agreement. (*Id.* at pp. 288–289, 122 S.Ct. 754.) *Waffle House* further noted that the EEOC was not a proxy for the individual employee, that the EEOC could prosecute the action without the employee's consent, and that the employee did not exercise control over the litigation. (*Id.* at p. 291, 122 S.Ct. 754.) Whereas *Waffle House* involved a suit by the government seeking to

> obtain victim-specific relief on behalf of an employee bound by the arbitration agreement, this case involves an employee bound by an arbitration agreement bringing suit on behalf of the government to obtain remedies other than victim-specific relief, i.e., civil penalties paid largely into the state treasury. Nothing in *Waffle House* suggests that the FAA preempts a rule prohibiting the waiver of this kind of qui tam action on behalf of the state for such remedies.

*Iskanian, LLC*, 59 Cal. 4th at 386. In the case of a PAGA claim, the State can seek civil penalties on its own. PAGA merely deputizes a qui tam actor to recover on its behalf. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 122 S.Ct. 754 (2002) demonstrates the correctness of *Iskanian*'s understanding of the limits on the reach of the FAA when governmental rights are involved in an agreement between private parties.

### 2. If This Court Elects to Compel an "Individual" PAGA Claim to Arbitration, Notwithstanding *Iskanian*, the Portions not Compelled Should be Stayed Pending the Decision in *Adolph*

In the event that the Court intends to compel Plaintiff's "Individual" PAGA claim to arbitration, then this Court should, at minimum, stay the PAGA claim pending the outcome of *Adolph v. Uber Technologies, Inc.*, S274671. In Adolph, the *only* issue under review is stated by the Supreme Court as follows:

> Whether an aggrieved employee who has been compelled to arbitrate claims under the Private Attorneys General Act (PAGA) that are "premised on Labor Code violations actually sustained by" the aggrieved employee (*Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. __, __ [142 S.Ct. 1906, 1916] (*Viking River Cruises*); see Lab. Code, §§ 2698, 2699, subd. (a)) maintains statutory standing to pursue "PAGA claims arising out of events involving other employees" (*Viking River Cruises*, at p. __ [142 S.Ct. at p. 1916]) in court or in any other forum the parties agree is suitable.

*See*, ISSUES PENDING BEFORE THE CALIFORNIA SUPREME COURT IN CIVIL CASES, found at https://supreme.courts.ca.gov/sites/default/files/supremecourt/default/2022-09/pendingissues-civil%20-%20093022_0.pdf (last viewed November 3, 2022).

*Adolph* arises from a non-published opinion. The decision of the California Supreme Court to grant review on the core issue of state law standing under PAGA that *Viking River* purported to address suggests concern exists as to the correctness of the United States Supreme Court's understanding of standing in PAGA cases. As a general principle, standing under California law is more expansive than standing in federal Court, and there is no reason to believe that this is less true in PAGA cases. At present, PAGA requires only administrative exhaustion to confer on an individual the right to serve as the State's proxy and bring an action to collect the civil penalties available to the State. The "representative" PAGA claim should not be dismissed at this time.

### III. CONCLUSION

In some circumstances, a non-mutual agreement may be substantively conscionable if the employer demonstrates a "reasonable business justification for the disparity." *Armendariz*, 24 Cal.4th at 120. There is no compelling business justification for truncating statutes of limitation, Thus, Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel Arbitration.

Respectfully submitted,

Dated: May 19, 2023

**MOON & YANG, APC**

By: _____
Kane Moon
H. Scott Leviant
Mariam Ghazaryan

Attorneys for Plaintiff