1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| DEVIN MICHAEL D. LONGBOY, | Case No.  23-cv-01248-AMO |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO COMPEL ARBITRATION** |
| PINNACLE PROPERTY MANAGEMENT SERVICES, LLC, et al., | Re: Dkt. No. 17 |
| Defendants. | |

Before the Court is Defendant Pinnacle Property Management Services, LLC's ("Pinnacle") motion to compel arbitration.  The matter is fully briefed and suitable for decision without oral argument.  *See* Civil L.R. 7-1(b).  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court hereby **GRANTS** the motion to compel arbitration of Plaintiff Devin Michael D. Longboy's ("Longboy") individual claims and **STAYS** the class claims and representative claims brought under California's Private Attorneys General Act ("PAGA"), for the following reasons.

I.      BACKGROUND

A.      Factual Background[1]

Plaintiff Devin Michael Longboy worked for Pinnacle as an assistant property manager from June 2020 to January 2022.  First Amended Complaint ("FAC") (ECF 15) ¶ 15.  On July 1,

---

[1] When evaluating a motion to compel arbitration, courts apply a standard similar to a motion for summary judgment, construing all facts and reasonable inferences in a light most favorable to the non-moving party.  *See Lomeli v. Midland Funding, LLC*, No. 19-CV-01141-LHK, 2019 WL 4695279, at *4 (N.D. Cal. Sept. 26, 2019) (citing *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004)).

2020, Longboy signed an "issue resolutions agreement" ("Agreement") with Pinnacle. Cassidy Decl. (ECF 17-1) ¶ 5, Ex. 1 (Agreement). The Agreement states that job applicants who wish to be considered for employment at Pinnacle must read and sign the Agreement requiring arbitration of any legal dispute.[2] *Id.* at 5 (emphasis in original) ("**If you wish to be considered for employment you must read and sign the following Issue Resolution Agreement. This Agreement requires you to arbitrate any legal dispute related to your application for employment, employment with, or termination from Pinnacle. You will not be considered as an applicant until you have signed the Agreement**."). The relevant terms of the Agreement state:

> I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment, and/or cessation of employment with Company **<u>exclusively</u>** by final and binding **<u>arbitration</u>** before a neutral Arbitrator.
>
> . . .
>
> Company agrees that it will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment, and/or cessation of employment with you, the claimant, **<u>exclusively</u>** by final and binding **<u>arbitration</u>** before a neutral Arbitrator.
>
> . . .
>
> I understand that I must file a claim for arbitration within one (1) year of the day on which I learned or, through reasonable diligence, should have learned that my legal rights were violated. I further agree that if I commence arbitration, it will be conducted in accordance with the "Issue Resolution Rules."

Agreement at 6-7. The Issue Resolution Rules attached to the Agreement state in bolded, capitalized text:

> **THE RULES CONTEMPLATED HEREIN AFFECT YOUR RIGHTS. READ THEM CAREFULLY FROM BEGINNING TO END BEFORE MAKING A DECISION. YOU HAVE THE RIGHT TO CONSULT A LAWYER CONCERNING THESE RULES OR YOUR EMPLOYMENT CONTRACT.**

---

[2] Despite having started working for Pinnacle in June 2020, Longboy does not dispute that he signed this Agreement in July 2020, and the parties offer no explanation to the Court regarding this seemingly odd timing.

United States District Court
Northern District of California

*Id.* at 9.  The Agreement also contains a severability clause:

> **Rule 18.** SEVERABILITY/CONFLICT WITH LAW
>
> In the event that any of these Issue Resolution Rules agreed upon by the Parties is held to be in conflict with a mandatory provision of applicable law, the conflicting Rule shall be modified automatically to comply with the mandatory provision of applicable law until such point as these Issue Resolution Rules may be modified in accordance with Rule 19 below.  In the event of an automatic modification with respect to a particular Rule, the remainder of these Rules shall not be affected.  An automatic modification of one of these Rules shall be applicable only in the jurisdiction in which it is in conflict with a mandatory provision of law.  In all other jurisdictions, these Issue Resolution Rules shall apply in full force and effect.

*Id.* at 18.  The final page of the Agreement states:

> I understand that by so notifying the Human Resources Department, I will not be bound to this Agreement and that I no longer will be eligible for employment at Company.  I recognize that if I sign the Agreement and do not withdraw within three (3) days of signing, I will be required to arbitrate any and all employment-related claims I may have against Company, whether or not I become employed by Company.
>
> This Agreement will be enforceable throughout the application process, my employment, and thereafter with respect to any claims arising from or relating to my application or candidacy for employment, employment, and/or cessation of employment with Company.  I then must arbitrate all my employment-related claims, and I may not file a lawsuit in court.

*Id.* at 19.  Longboy signed and printed his name on the last page of the Agreement.  *Id.*[3]

### B.    Procedural Background

On January 24, 2023, Longboy filed this putative class action in the Superior Court for the County of San Mateo, alleging various violations of California law.  ECF 1-1, Ex. A at 9.  Pinnacle removed the case to federal court under the Class Action Fairness Act ("CAFA") on March 17, 2023, within 30 days of being served with Longboy's complaint.  *Id.* at 5; ECF 1 at 6-8.  On April 5, 2023, Longboy filed the First Amended Complaint (FAC), which alleges eight causes of action against Pinnacle, InterSolutions, LLC,[4] and DOES 1-10 on behalf of himself and a

---

[3] Longboy does not dispute that he signed the Agreement, or that it contains arbitration provisions.  *See* "Response" (ECF 23) at 4-5.

[4] Longboy dismissed Defendant Intersolutions, LLC without prejudice on May 4, 2023.  ECF 16.

United States District Court
Northern District of California

1 putative class: (1) Failure To Pay Minimum Wages; (2) Failure To Pay Overtime; (3) Failure To

2 Provide Meal Periods; (4) Failure To Authorize And Permit Rest Breaks; (5) Failure To Indemnify

3 Necessary Business Expenses; (6) Failure To Timely Pay Final Wages at Termination; (7) Failure

4 to Provide Accurate Itemized Wage Statements; and (8) Unfair Business Practices.  FAC at 1.  He

5 also brings a ninth cause of action as a representative action under the California Private Attorneys

6 General Act ("PAGA") to recover civil penalties owed to him, the State of California, and

7 aggrieved employees.  *Id.* ¶ 3.  On May 5, 2023, Pinnacle moved to compel Longboy's individual

8 claims to arbitration and to dismiss the class claims and representative PAGA claim.  ECF 17

9 ("Motion").

## II.     LEGAL STANDARD

11     The Federal Arbitration Act ("FAA") governs motions to compel arbitration.

12 9 U.S.C. §§ 1, *et seq.*  Section 2 of the FAA provides that an arbitration agreement "shall be valid,

13 irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

14 of any contract[.]"  9 U.S.C. § 2.  The final clause of 9 U.S.C. "permits agreements to arbitrate to

15 be invalidated by generally applicable contract defenses, such as . . . unconscionability[.]"  *Lim v.*

16 *TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (citation omitted).  The FAA requires that

17 courts consider two "gateway issues": "(1) whether a valid agreement to arbitrate exists and, if it

18 does, (2) whether the agreement encompasses the dispute at issue."  *Id.* (citing *Chiron Corp. v.*

19 *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  "In determining whether a

20 valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern

21 the formation of contracts."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)

22 (citation and quotations omitted).  If the court is "satisfied that the making of the agreement for

23 arbitration or the failure to comply therewith is not in issue, the court shall make an order directing

24 the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

25 "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."

26 *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

## III.    DISCUSSION

28     Pinnacle moves to compel arbitration based on the Agreement Longboy signed.  "Motion"

United States District Court
Northern District of California

1    (ECF 17) at 9-12.  Longboy contends that the Agreement is unenforceable because it is

2    unconscionable.  "Response" (ECF 23) at 5-10.  He further argues that the unconscionable

3    provisions so permeate the Agreement that they cannot be severed.  *Id.* at 10-12.  Because the

4    arbitration agreement's enforceability is a touchstone issue, *see Lim*, 8 F.4th at 999, the Court first

5    considers whether the Agreement is unconscionable.

6         "It is well-established that unconscionability is a generally applicable contract defense,

7    which may render an arbitration provision unenforceable."  *Nagrampa v. MailCoups, Inc.*, 469

8    F.3d 1257, 1280 (9th Cir. 2006).  Under California law, a court may refuse to enforce a provision

9    when it is procedurally and substantively unconscionable.  *Id.*  Although both procedural and

10   substantive unconscionability must be present, "they need not be present in the same degree."

11   *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) (citation omitted).  Instead,

12   there is a "sliding scale" whereby the more substantively oppressive a contract term, the less

13   procedurally unconscionable it must be to be deemed unenforceable, and vice versa.  *Id.*; *see also*

14   *Lim*, 8 F.4th at 1000 (same).  The party asserting unconscionability bears the burden of proving it.

15   *OTO, LLC v. Kho*, 8 Cal. 5th 111, 126 (2019) (citations omitted).  The Court now turns to whether

16   Longboy has met that burden here, beginning with the question of procedural unconscionability.

17        **A.      Procedural Unconscionability**

18        Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining

19   power."  *Lim*, 8 F.4th at 1000 (citation omitted).  "Oppression" concerns "an inequality of

20   bargaining power that results in no real negotiation and an absence of meaningful choice."  *Id.*

21   (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017)).  "Surprise involves

22   the extent to which the contract clearly discloses its terms as well as the reasonable expectations of

23   the weaker party."  *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (citations

24   omitted).

25        **1.      Oppression**

26        In California, oppression may be established by showing that an agreement was a contract

27   of adhesion.  *Id.* at 923 (citation omitted).  Contracts of adhesion are those "imposed and drafted

28   by the party of superior bargaining strength, [which] relegate[] to the subscribing party only the

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1  opportunity to adhere to the contract or reject it." *Poublon*, 846 F.3d at 1260-61 (quoting

2  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000)).  While "the

3  adhesive nature of the contract is sufficient to establish some degree of procedural

4  unconscionability in a range of circumstances, [] the California Supreme Court has not adopted a

5  rule that an adhesion contract is per se unconscionable." *Id.* at 1261 (citations and quotations

6  omitted).  In the employment context, the Ninth Circuit has stated that under California law, "if an

7  employee must sign a non-negotiable employment agreement as a condition of employment but

8  there is no other indication of oppression or surprise, then the agreement will be enforceable

9  unless the degree of substantive unconscionability is high." *Id.* (citations and quotations omitted).

10  Pinnacle does not dispute that the Agreement was a contract of adhesion "offered on a take

11  it or leave it basis." Motion at 13.  The plain language of the Agreement states: "This Agreement

12  requires you to arbitrate any legal dispute related to your application for employment, employment

13  with, or termination from Pinnacle.  You will not be considered as an applicant until you have

14  signed the Agreement." Agreement at 5.  Instead, Pinnacle argues that without additional

15  evidence of surprise or oppression, the fact that this is a contract of adhesion is not enough to

16  make it procedurally unconscionable.  Motion at 13.  The Court agrees.

17  Because on its own, the adhesive nature of the Agreement does not indicate a high degree

18  of procedural unconscionability, *see Poublon*, 846 F.3d at 1261, the Court now considers whether

19  there is additional evidence of oppression or surprise.  Circumstances that may establish

20  oppression include:

21  (1) the amount of time the party is given to consider the proposed contract; (2) the
22  amount and type of pressure exerted on the party to sign the proposed contract;
     (3) the length of the proposed contract and the length and complexity of the
23  challenged provision; (4) the education and experience of the party; and (5) whether
     the party's review of the proposed contract was aided by an attorney.
24

25  *OTO*, 8 Cal. 5th at 126-27 (citation omitted).

26  Considering the record currently before the Court, these factors weigh against a finding of

27  oppression.  Longboy provides no evidence that Pinnacle exerted on pressure on him, denied him

28  sufficient time to consider the contract, or deprived him of the opportunity to review the contract

United States District Court
Northern District of California

1   with an attorney.  By the terms of the contract, parties are given three days to opt-out of the

2   Agreement after signing (*see* Agreement at 5) and there is no evidence in the record that Longboy

3   was not given enough time to consider the Agreement.  *Cf. OTO*, 8 Cal. 5th at 127 (significant

4   oppression where a low-level employee presented the plaintiff with the agreement in his

5   workplace and waited for him to sign the documents before leaving, which "conveyed an

6   expectation" that he needed to sign the documents immediately, and any time plaintiff spent

7   reviewing the agreement would have reduced his pay).

8        Longboy's opposition asserts that it is procedurally unconscionable "to force a low-wage

9   unsophisticated worker to sign an adhesion contract. . . ."  Response at 6.  However, his claimed

10   low-wage salary and lack of sophistication are unsupported by evidence.  *See* N.D. Cal. Civil L.R.

11   7-5(a) ("Factual contentions made in support of or in opposition to any motion must be supported

12   by an affidavit or declaration and by appropriate references to the record").  Even if the Court

13   could credit Longboy's assertions, Pinnacle has come forward with evidence establishing that the

14   assertion is false.  *See* Favarote Decl. (ECF 25-1) Ex. A (Longboy resume showing college degree

15   in Business and multiple years of managerial experience).

16        Longboy next asserts that the 15-page document was "overly complex" and that he "would

17   not have understood the legal significance of the [arbitration] clause."  Response at 6.  He provides

18   no legal or factual support for this contention, and he does not point to any particular provision.

19   The first few pages of the Agreement contain plain language stating:

20           I agree that I will settle any and all previously unasserted claims, disputes or
21           controversies arising out of or relating to my application or candidacy for
            employment, employment, and/or cessation of employment with Company
22           **exclusively** by final and binding **arbitration** before a neutral Arbitrator.

23   Agreement at 6 (emphasis in original).  The Agreement then lists examples of the claims this

24   covers, such as state and federal anti-discrimination statutes and the Americans with Disabilities

25   Act.  *Id.*  The Agreement repeatedly bolds and underlines words indicating that the employee must

26   exclusively settle any claims, disputes, or controversies by arbitration.  *See, e.g.*, *id.*  It is true that

27   there are eleven pages of Issue Resolution Rules following; however, the very first page of the

28   Agreement states the significance of the terms in bold language:

**If you wish to be considered for employment you must read and sign the following Issue Resolution Agreement. This Agreement requires you to arbitrate any legal dispute related to your application for employment, employment with, or termination from Pinnacle.**

Agreement at 5.  The top of the Issue Resolution Rules states in bold, capitalized letters set apart from the rest of the provisions:

**THE RULES CONTEMPLATED HEREIN AFFECT YOUR RIGHTS. READ THEM CAREFULLY FROM BEGINNING TO END BEFORE MAKING A DECISION. YOU HAVE THE RIGHT TO CONSULT A LAWYER CONCERNING THESE RULES OR YOUR EMPLOYMENT CONTRACT.**

*Id.* at 9.  Right above the signature line on the last page, the Agreement again states: "I recognize that if I sign the Agreement and do not withdraw within three (3) days of signing, I will be required to arbitrate any and all employment-related claims I may have against Company, whether or not I become employed by Company."  *Id.* at 19.

Considering these factors, while there is some oppression because this is a contract of adhesion, the oppression is minimal.  *Cf. Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 244-45 (2016) (moderate procedural unconscionability in adhesion contract where the employer failed to provide the governing rules, identify which rules govern the arbitration, or give an opportunity to review any rules).  The Court now turns to whether surprise might support a finding of procedural unconscionability.

### 2.    Surprise

Surprise exists when "the allegedly unconscionable provision is hidden within a prolix printed form."  *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012) (citation omitted).  "An agreement may thwart understanding by hiding the challenged provision, or by using language – for example, complex statements filled with legal jargon – rendering the substance of the challenged provision opaque."  *Long Beach Unified Sch. Dist. v. Margaret Williams, LLC*, 43 Cal. App. 5th 87, 104 (2019).  Longboy does not differentiate between his arguments about oppression or surprise.  As stated above, he simply states that the

8

United States District Court
Northern District of California

Agreement is fifteen pages long and an "overly complex" adhesion contract.  Response at 6.[5]  While the Agreement provides many pages of rules, there is no evidence that the terms are hidden.

The very first page of the rules includes a bolded paragraph, set apart from the rest of the page, that makes clear that employees must arbitrate all legal disputes.  *See* Agreement at 5.  The following page continues to discuss arbitration and includes bolded and underlined words highlighting the arbitration agreement.  *Id.* at 6.  The Issue Resolution Rules, though lengthy, include clearly labeled capitalized headings set apart from the text alerting the reader to different rules such as "CLAIMS SUBJECT TO ARBTIRATION," "CLAIMS NOT COVERED BY THE IRP," "PROCEDURE," and "TIME LIMITS."  *See* Agreement at 9-11.

This provides clear notice of the terms of the Agreement.  *See, e.g.*, *Dike v. Zara USA, Inc.*, No. 23-CV-00342-WHO, 2023 WL 3391427, at *6 (N.D. Cal. May 10, 2023) (seven paragraphs in Arbitration Agreement were "clearly labeled in bold, underlined font, alerting the readers to [the various] sections"); *cf. Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 89 (2003), *as modified on denial of reh'g* (Jan. 8, 2004) (finding procedural unconscionability where "[t]he arbitration clause was particularly inconspicuous, printed in eight-point typeface on the opposite side of the signature page of the [automobile] lease" and plaintiff was never informed that the lease contained an arbitration provision); *Lim*, 8 F.4th at 1001 (unfair surprise where a delegation clause was in the middle of 31 numbered paragraphs of single-spaced, 10-point font and "[n]othing in the text of the agreement called [the employee's] attention to the delegation clause").

Given the lack of surprise and the minimal oppression, there is minimal procedural unconscionability.  *See Gold v. Illumina, Inc.*, No. 22-CV-05036-JST, 2023 WL 4830126, at *4 (N.D. Cal. July 27, 2023) (although the contract was one of adhesion, the case presented "no other circumstances constituting oppression or surprise," indicating minimal procedural unconscionability).  Accordingly, there must be a higher amount of substantive unconscionability

---

[5] Longboy argues that the length of the Agreement, which includes the applicable arbitration rules, supports a finding of procedural unconscionability.  However, the failure to include or attach the arbitration rules may be a factor in support of a finding of procedural unconscionability.  *See Lane v. Francis Cap. Mgmt. LLC*, 224 Cal. App. 4th 676, 690 (2014).  As Pinnacle included the rules in the Agreement, that factor does not apply here.

present for the Court to find the arbitration agreement unconscionable.  *See id.* at *5 (citing

*Poublon*, 846 F.3d at 1261).

### B.     Substantive Unconscionability

Substantive unconscionability requires that terms be "overly harsh," "unduly oppressive,"

"unreasonably favorable," or that they "shock the conscience."  *Poublon*, 846 F.3d at 1261 (citing

*Sanchez*, 61 Cal. 4th at 910-911) (emphasis omitted).  "Not all one-sided contract provisions are

unconscionable."  *Sanchez*, 61 Cal. 4th at 911.  That is, substantive unconscionability must show

terms that are "unreasonably favorable to the more powerful party," not simply an "old-fashioned

bad bargain."  *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) (citation omitted).

Longboy argues that the arbitration agreement is substantively unconscionable because it

lacks mutuality, requires a $50 fee, has a shortened statute of limitations, and limits discovery.

Response at 7-20.  The Court considers each argument below.

### 1.     <u>Mutuality</u>

Longboy argues that because he had limited bargaining power and had to sign the

agreement as a condition of obtaining employment, there was a "lack of mutuality."  ECF 23 at 7.

Longboy misconstrues the mutuality requirement, as it does not refer to relative bargaining power.

Instead, an agreement lacks mutuality "if it requires one contracting party, but not the

other, to arbitrate all claims arising out of the same transaction or occurrence or series of

transactions or occurrences."  *Armendariz*, 24 Cal. 4th at 120.  That is, "the doctrine of

unconscionability limits the extent to which a stronger party may, through a contract of adhesion,

impose the arbitration forum on the weaker party without accepting that forum for itself."  *Id.* at

118.

Here, the Agreement clearly requires that both parties submit their claims to arbitration.

*See* Agreement at 6 (emphasis in original) ("Company agrees that it will settle any and all

previously unasserted claims, disputes or controversies arising out of or relating to my application

or candidacy for employment, employment, and/or cessation of employment with you, the

claimant, **<u>exclusively</u>** by final and binding **<u>arbitration</u>** before a neutral Arbitrator.").  The

Agreement also provides examples of the types of claims that the arbitration agreement covers.

United States District Court
Northern District of California

*See id.* at 7.  The California Supreme Court in *Baltazar* held that this type of language shows that the parties "mutually agree to arbitrate all employment-related claims."  *Baltazar*, 62 Cal. 4th at 1249.  The agreement in *Baltazar* similarly covered all employment-related actions and provided a non-exhaustive list of the types of claims that would be covered by the arbitration agreement.  *See id.*  As the Agreement here requires both parties to arbitrate all employment-related controversies, mutuality is present, which undercuts a finding of substantive unconscionability.

### 2.    Rule 4(a) Filing Fee

Rule 4(a) of the Issue Resolution Rules requires that an employee seeking to commence arbitration must file an arbitration request form along with a $50 filing fee to Pinnacle. Agreement at 10-11.  Longboy argues that this provision shocks the conscience and is unreasonably favorable to Pinnacle as it requires an employee to pay its employer to begin arbitration.  ECF 23 at 7-8.  The relevant provision states:

> An Employee shall commence an arbitration by filing an Arbitration Request Form. This may be done by submitting the Arbitration Request Form to:
>
> **Pinnacle Property Management Services, LLC**
> **Attn: Human Resources Department**
> **5055 Keller Springs Suite 400**
> **Addison, TX 75001**
>
> The Arbitration Request Form must be accompanied by a $50.00 filing fee made payable to "Pinnacle Property Management Services, LLC."

Agreement at 10-11 (emphasis in original).  Rule 13 "FEES AND EXPENSES" provides:

> The Company shall advance all costs of arbitration. Each Party shall advance its own incidental costs. Subject to the other provisions of this Rule set forth below, each Party shall pay one- half of the costs of arbitration following the issuance of the arbitration award. The Employee's liability for the costs and fees of arbitration, other than attorneys' fees, however, shall be limited to $100.

*Id.* at 16-17.

The California Supreme Court has recognized that "it is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high . . ."  *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1144-

1    45 (2013) (quoting *Gutierrez*, 114 Cal. App. 4th at 90); *see also Armendariz*, 24 Cal. 4th at 110-

2    111 (emphasis in original) ("[W]hen an employer imposes mandatory arbitration as a condition of

3    employment, the arbitration agreement or arbitration process cannot generally require the

4    employee to bear any *type* of expense that the employee would not be required to bear if he or she

5    were free to bring the action in court").

6         Although Rule 4(a) requires only the employee to pay a fee to begin arbitration, when read

7    in conjunction with Rule 13, it is clear that the employer bears the significant costs of arbitration.

8    Rule 13 specifies that the employee's liability for arbitration (other than attorneys' fees) is limited

9    to $100.  Agreement at 17; *see Ridgeway v. Nabors Completion & Prod. Servs. Co.*, 725 F. App'x

10   472, 474 (9th Cir. 2018) (determining that fees were not unconscionable when the expense

11   provisions were read together because they only required an employee to pay $150 in fees).  As in

12   *Ridgeway*, the Agreement here requires the employee to pay a maximum of $150.  *See* Agreement

13   at 10-11, 16-17.

14        Longboy has not shown that arbitration would be prohibitively expensive or that it requires

15   that he pay different types of fees or higher fees than would be required in court.  *See Green Tree*

16   *Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000) ("[A] party seek[ing] to invalidate an

17   arbitration agreement on the ground that arbitration would be prohibitively expensive [] bears the

18   burden of showing the likelihood of incurring such costs.").  Accordingly, the $50 filing fee does

19   not support a finding of substantive unconscionability.

20        **3.**     **Rule 4(b) Statute of Limitations**

21        Longboy also argues that Rule 4(b), which requires employees to initiate an arbitration

22   within one year, is substantively unconscionable.  Response at 8-9 (citing Agreement at 11).  The

23   relevant provision of the agreement states:

24        The "Arbitration Request Form" shall be submitted not later than **one year** after the
     date on which the Employee knew, or through reasonable diligence should have

25   known, of the facts giving rise to the Employee's claim(s). The failure of an
     Employee to initiate an arbitration within the one-year time limit shall constitute a

26   **waiver** with respect to that dispute relative to that Employee. Notwithstanding
     anything stated herein to the contrary, this clause will not affect tolling doctrines

27   under applicable state laws or the employee's ability to arbitrate continuing
     violations.

28

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1    Agreement at 11 (emphasis in original).

2        The Ninth Circuit has not been consistent in determining whether shortening a statute of

3    limitations is unconscionable.  In some instances, California courts have upheld contractual

4    shortening of statutes of limitations, including for employment claims, as long as the shorter

5    period is reasonable.  *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042-44 (9th Cir. 2001) (six-

6    month limitation not substantively unconscionable).  However, the Ninth Circuit has also ruled

7    that "forcing employees to comply with a strict one-year limitation period for employment-related

8    statutory claims is oppressive in a mandatory arbitration context."  *Davis v. O'Melveny & Myers*,

9    485 F.3d 1066, 1076 (9th Cir. 2007); *see Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th

10   227, 254 (2015) ("California courts have held that, in the context of statutory claims such as the

11   wage-and-hour claims brought by [plaintiff], a provision in an arbitration agreement shortening

12   the statutory limitations period is substantively unconscionable"); *see also Ali v. Daylight Transp.,*

13   *LLC*, 59 Cal. App. 5th 462, 478 (2020) (finding arbitration provision substantively unconscionable

14   where it required claims be brought within 120 days, when labor claims have at least a three-year

15   statute of limitations) (citing cases).

16       Here, the California provisions on which Longboy bases his claims have three and four-

17   year statutes of limitations.  *See* Cal. Labor Code §§ 201-204; Cal. Bus. & Prof. Code §§ 17200,

18   12708; Cal. Code of Civil Proc. § 338.  Given the substantial shortening of the statute of

19   limitations, the Court finds this provision supports a finding of substantive unconscionability.

20               **4.    Rule 7 Discovery Provisions**

21       Finally, Longboy argues that the discovery provisions as laid out in Rule 7 are

22   substantively unconscionable as each party is limited to 20 interrogatories, which must be

23   answered within 21 days of receipt.  Response at 9-10 (citing Agreement at 13).[6]  Rule 7 also

24   dictates that the Arbitrator may permit additional discovery if there is a substantial need, the

25   discovery is not overly burdensome, and it will not unduly delay arbitration (7(c)); the Arbitrator

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [6] The Agreement also reduces the number of depositions allowed, from 10 under Federal Rule of
     Civil Procedure 30, to three depositions here.  *See* Agreement at 13.  While the Court is concerned
28   by this limitation, Longboy does not argue that this is substantively unconscionable.

decides all discovery disputes as guided by the Federal Rules of Civil Procedure (7(d)); and the parties "shall make every effort to complete all discovery within ninety (90) calendar days after the selection of an Arbitrator" (7(e)):

**Rule 7**. DISCOVERY

The parties explicitly agree to the following limited discovery rules:

a. INTERROGATORIES/DOCUMENT REQUESTS

Each Party may propound one set of 20 interrogatories (including subparts) to the opposing Party. Interrogatories are written questions asked by one party to the other, who must answer under oath. Such interrogatories may include a request for all documents upon which the responding party relies in support of its answers to the interrogatories. Answers to interrogatories must be served within 21 calendar days of receipt of the interrogatories.

b. DEPOSITIONS

A deposition is a statement under oath that is given by one party in response to specific questions from the other party, and usually is record- ed or transcribed by a court reporter. Each Party shall be entitled to take the deposition of up to three (3) individuals of the Party's choosing. The Party taking the deposition shall be responsible for all costs associated therewith, such as the cost of a court reporter and the cost of a transcript.

c. ADDITIONAL DISCOVERY

Upon the request of any Party and a showing of substantial need, the Arbitrator may permit additional discovery, but only if the Arbitrator finds that such additional discovery is not overly burdensome, and will not unduly delay conclusion of the arbitration.

d. DISCOVERY DISPUTES

The Arbitrator shall decide all disputes related to discovery. Such decisions shall be final and binding on the Parties. In ruling on discovery disputes, the Arbitrator shall be guided by the discovery rules contained in the Federal Rules of Civil Procedure.

e. TIME FOR COMPLETION OF DISCOVERY

All discovery shall be completed in an expeditious manner. In order to expedite the arbitration, the Parties may initiate discovery prior to the appointment of the Arbitrator. The Parties and the Arbitrator shall make every effort to complete all discovery within ninety (90) calendar days after the selection of an Arbitrator. However, the discovery cutoff date shall govern, as per Rule 5 above.

Agreement at 13.

The number of interrogatories does not depart drastically from the federal rules. Federal Rule of Civil Procedure 33 allows 25 interrogatories and requires that responses be served within 30 days. Fed. R. Civ. P. 33. Here, the Agreement limits the number of interrogatories to 20 and requires that responses be served in 21 days. Agreement at 13.

Longboy cites to no caselaw or authority to support his argument that this provision is substantively unconscionable, but instead argues that the provisions do not follow federal or state rules of civil procedure. Response at 10. However, the mere fact that Rule 7 streamlines discovery does not make the arbitration provision unconscionable.[7]

"The California Supreme Court has made clear that 'limitation on discovery is one important component of the 'simplicity, informality, and expedition of arbitration.'" *Poublon*, 846 F.3d at 1270 (citing *Armendariz*, 24 Cal. 4th 83 at 106 n.11). "Because 'arbitration is meant to be a streamlined procedure,' parties may agree to limit the number of depositions and impose other restrictions." *Id.* (citing *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 983 (2010)). The Court must balance the "desirable simplicity" of limiting discovery with the need for discovery "sufficient to adequately arbitrate [the] statutory claim[.]" *Id.* (citing *Armendariz*, 24 Cal. 4th at 106); *see, e.g.*, *Sanchez v. Carmax Auto Superstores California, LLC*, 224 Cal. App. 4th 398, 404 (2014) ("*Carmax*") (limiting discovery to 20 interrogatories and three depositions was reasonable where the arbitration provision also allowed for additional discovery if a party showed "substantial need" and the arbitrator found the additional discovery was not unduly burdensome and would not unduly delay arbitration); *cf. Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 717-19 (2004) (finding substantively unconscionable a provision limiting discovery to two depositions and no written discovery, with additional discovery permitted only if the party could show a compelling need). Here, as in *Carmax*, the discovery rules in the arbitration provision permit 20 interrogatories and three depositions, and Longboy has not indicated that he would require more discovery to

---

[7] The Court is not persuaded by Longboy's argument, without authority, that the provision in Rule 7 stating "[t]he Parties and the Arbitrator shall make every effort to complete all discovery within ninety (90) calendar days after the selection of an Arbitrator" is unconscionable. Response at 10.

1    adequately litigate his claims.  *See* 224 Cal. App. 4th at 404-05.[8]  Thus, the Court does not find the

2    challenged discovery limitations unconscionable.

3        Because the Court has found that there is some procedural unconscionability and

4    substantive unconscionability in the Rule 4 provision limiting the statute of limitations, the Court

5    must determine whether the contract as a whole is unenforceable or whether the unconscionable

6    provision may be severed.

7        **C.    Severability**

8        The Issue Resolution Rules contemplate the possibility that a rule will conflict with a

9    mandatory provision of law.  In the event of such a conflict, Rule 18 states that the conflicting rule

10   shall be modified automatically to comply with the mandatory provision of law.  Agreement at 18.

11   Longboy argues that the Court should refuse to enforce the entire contract because of the presence

12   of multiple unconscionable provisions that were unlawful when made, and that Rule 18 itself is

13   unconscionable.  Response at 10-12.

14       California Civil Code § 1670.5(a) provides:

15       If the court as a matter of law finds the contract or any clause of the contract to have
         been unconscionable at the time it was made the court may refuse to enforce the
16       contract, or it may enforce the remainder of the contract without the unconscionable
         clause, or it may so limit the application of any unconscionable clause as to avoid
17       any unconscionable result.

18

19   The California Supreme Court has held that "the statute appears to give a trial court some

20   discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to

21   enforce the entire agreement.  But it also appears to contemplate the latter course only when an

22   agreement is 'permeated' by unconscionability."  *Armendariz*, 24 Cal. 4th at 122.

23       In California, "the strong legislative and judicial preference is to sever the offending term

24   and enforce the balance of the agreement."  *Dotson*, 181 Cal. App. 4th at 985-986 (finding that the

25   _____

26   [8] Longboy also argues that Rule 7's reference to Rule 5 for the discovery cutoff date that shall
     govern is "nonsensical."  Response at 10 (citing Agreement at 13).  Rule 5 discusses the selection
27   of an arbitrator and explains that the arbitration will follow the rules of the referral agency.
     Agreement at 12.  As a referral agency may impose discovery deadlines, this rule is not
28   "nonsensical."

16

trial court abused its discretion by failing to sever an unconscionable provision that could have easily been severed "without affecting the remainder of the agreement" as it did not "permeate the agreement with an unlawful purpose."). However, "[s]everance is not permitted if the court would be required to augment the contract with additional terms because [Section] 1670.5 does not authorize reformation by augmentation." *Lim*, 8 F.4th at 1005. Nor is severance permitted if the term is drafted in bad faith. *Id.* at 1005-06. The existence of multiple illegal or unconscionable clauses is one factor in considering whether a contract is "permeated by unconscionability." *See Poublon*, 846 F.3d at 1273. The "dispositive question is whether 'the central purpose of the contract' is so tainted with illegality that there is no lawful object of the contract to enforce." *Id.* (citing *Marathon Ent., Inc. v. Blasi*, 42 Cal. 4th 974, 996 (2008), *as modified* (Mar. 12, 2008)).

Here, the Court found Rule 4(b)'s substantial reduction in the statute of limitations from three or four years to one year was unconscionable. However, this provision does not "permeate" the entire agreement or "taint" it with illegality. *See Poublon*, 846 F.3d at 1272. Although Longboy argues that there are multiple unlawful provisions, Response at 11, he has not shown how any of the provisions are unlawful. Accordingly, the Court concludes that the arbitration agreement is valid and enforceable once the provision limiting claims to a one-year statute of limitations is removed.

### D.     Representative PAGA Claims

Pinnacle argues that once Longboy is compelled to arbitrate his individual claims, the remaining claims—the class claims and the representative PAGA claims—must be dismissed or stayed. Motion at 10-11. A brief survey of the legal landscape is necessary.

"PAGA allows an aggrieved employee to seek civil penalties for Labor Code violations committed against her and other aggrieved employees by bringing, on behalf of California, a representative action against her employer." *Valencia v. Mattress Firm, Inc.*, No. C-22-06875-WHA, 2023 WL 2062951, at *3 (N.D. Cal. Feb. 16, 2023) (citing Cal. Lab. Code § 2699). In *Viking River Cruises, Inc. v. Moriana*, the Supreme Court determined that PAGA claims are "representative" in two ways. 596 U.S. 639, 648 *reh'g denied*, (2022). First, PAGA claims are representative in the sense that they are brought by employees acting as representatives (i.e.,

1    agents or proxies) of the state.  *Id.*  Second, PAGA claims are also "representative" when

2    "predicated on code violations sustained by other employees."  *Id.*  Regarding the latter, the Court

3    wrote, "it makes sense to distinguish 'individual' PAGA claims, which are premised on Labor

4    Code violations actually sustained by the plaintiff, from 'representative' (or perhaps quasi-

5    representative) PAGA claims arising out of events involving other employees."  *Id.* at 648-49.

6           The Supreme Court in *Viking River* held that PAGA actions could be divided into

7    individual and non-individual claims through an agreement to arbitrate, reversing the California

8    Supreme Court's holding in *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348

9    (2014).  *Id.* at 662.  The Supreme Court left *Iskanian*'s rule valid to the extent that when individual

10   PAGA claims are compelled to arbitration, the remaining claims may not be dismissed simply

11   because they are "representative."  *Id.* at 662-63.  However, the Supreme Court held that once

12   individual claims are separated, "as we see it, PAGA provides no mechanism to enable a court to

13   adjudicate non-individual claims."  *Id.* at 663.  That is, once "an employee's own dispute is pared

14   away from a PAGA action, the employee is no different from a member of the general public, and

15   PAGA does not allow such persons to maintain suit" as the individual lacks statutory standing.  *Id.*

16          In *Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104, 1116 (2023),[9] the Supreme Court of

17   California granted review "to provide guidance on statutory standing under PAGA" in light of the

18   decision in *Viking River*.  *Adolph* held that "[w]here a plaintiff has brought a PAGA action

19   comprising individual and non-individual claims, an order compelling arbitration of the individual

20   claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf

21   of other employees under PAGA."  *Id.* at 1114; *see Johnson v. Lowe's Home Centers, LLC*, No.

22   22-16486, 2024 WL 542830, at *3 (9th Cir. Feb. 12, 2024) (explaining that *Adolph* "corrected

23   *Viking River*'s misunderstanding of PAGA" and a plaintiff does not lose statutory standing under

24   PAGA to pursue representative PAGA claims unless there has been a "final determination that the

25   plaintiff's arbitrated individual PAGA claim is without merit").

26          The court further explained that PAGA standing only requires a plaintiff to be an

27   _____

28   [9] The California Supreme Court decided *Adolph* while the instant motion was pending.

United States District Court
Northern District of California

"aggrieved employee," which is "someone who was employed by the alleged violator" and "against whom one or more of the alleged violations was committed." *Adolph*, 14 Cal. 5th at 1114 (quotation marks and citations omitted). The court reasoned that "[w]hen an action includes arbitrable and nonarbitrable components," the court may stay the nonarbitrable action until the arbitration is completed. *Id.* at 1125. Staying the non-individual PAGA claims can help the courts avoid re-litigating the plaintiff's status as an aggrieved employee. *Id.* at 1123-24. In sum, an aggrieved employee "does not lose standing to litigate non-individual claims by virtue of being compelled to arbitrate individual claims . . . even if the employee obtains redress for individual claims in arbitration." *Id.* at 1127; *see DeMarinis v. Heritage Bank of Com.*, 98 Cal. App. 5th 776, 9 (2023) (under *Adolph*, the "parties remain free to utilize the informal and expedient procedures of arbitration for an individual PAGA claim, without forsaking the advantages of a judicial forum (e.g., procedural rigor, multilayered review) for the nonindividual PAGA claims"); *see, e.g.*, *Barrera v. Apple Am. Grp. LLC*, 95 Cal. App. 5th 63, 90 (2023) (concluding that under *Adolph*, the "plaintiffs maintain standing to pursue their non-individual PAGA claims in court").

The Supreme Court of California is the "final arbiter of what is state law" in California. *Adolph*, 14 Cal. 5th at 1119 (quoting *Montana v. Wyoming*, 563 U.S. 368, 377 n.5 (2011)). Accordingly, the Court follows the holding in *Adolph*. Longboy does not lose standing to litigate his representative PAGA claims simply because he must arbitrate his individual claims against Pinnacle. Thus, the Court denies Pinnacle's motion with respect to dismissal of Longboy's non-individual PAGA claims. In the interest of preventing re-litigation of any issues that may overlap with claims subject to arbitration, including Longboy's status as an aggrieved employee, the Court stays this action pending the outcome of the individual arbitration proceedings. *See* 9 U.S.C. § 3; Cal. Code. Civ. Proc. § 1281.4; *Adolph*, 14 Cal. 5th at 1124-25.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Pinnacle's motion to compel arbitration of the individual claims. The Court hereby **STAYS** the remaining class claims and representative PAGA claims until the completion of arbitration proceedings. The parties are directed to inform the Court within thirty (30) days of completion of the arbitration proceedings and to file a joint

statement at that time regarding the parties' proposal for how to proceed.

     **IT IS SO ORDERED.**

Dated: February 23, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**